UNITED STATES DISTRICT COURT MIDDLE
DISTRICT OF ALABAMA EASTERN DIVISION
-------------------------------------------------------------------X

DONALD JONES, et al,

Plaintiff(s).

v.

ROBERT WILKIE, Secretary of the United States
Department of Veterans Affairs, DAVID SHULKIN,
Secretary of the United States Department of Veterans
Affairs, LINDA BOYLE, Medical Center Director for
CAVHCS, CLYDE W. MARSH, State Commissioner
and Director of the Alabama Department of Veterans
Affairs, JACQUELYNN LEWIS, Non VA Medical
Care Chief, SHARON HICKS, Non VA Community
Care, CYNTHIA BLAND, VHA Office of Community
Care, JANE CAMELLIA, CAVHCS Nurse, JOHN
DOE (1), Birmingham VA Medical Center clerk,
LEWIS A. UWAGERIKPE, Veterans Healthcare
Provider, RANDALL WEAVER, MD, TERRY
ANDRUS, President and CEO of EAMC, DAVID G.
FAGAN, Chief of Staff at EAMC, JAMES ROBERT
COBB, Emergency Room Medical Doctor at EAMC,
EAST ALABAMA MEDICAL CENTER, Lanier,
JANE DOE (2), EAMC business office clerk, LINDA
LYND, Medical Director of Emergency Physicians,
JOHN DOE (3), a veteran's hospital employee, JOHN
DOE (4), Wisconsin Evidence Intake Center Regional
Office Director, JOHN DOE (5), an employee at the
Wisconsin Evidence Intake Center, JOHN DOE (1-
99), Employees, JANE DOE (1-99), Employees,

Defendants.
-------------------------------------------------------------------X

**VERIFIED CIVIL RIGHTS
COMPLAINT PURSUANT TO
42 U.S.C. 1983 AND A *BIVENS*
ACTION**

Civil Claim No: 3:19-CV-200-WKW

Claim of Unconstitutionally

JURY DEMAND

CLASS ACTION
(IN PART)

## I.   Introduction

1.       This is an action pursuant to Bivens v. Six Unknown Named Agents of the

Federal Bureau of Narcotics, 403 US 388 (1971), the Civil Rights Act of 1871, 42 U.S.C.

§ 1983, and 28 U.S.C. § 1343 (a) (1), (2), (3), & (4), and the Federal Torts Claim Act

(FTCA), which seeks redress for deprivation of guaranteed constitutional and statutory

rights.   Plaintiff also seeks declaratory and injunctive relief.   Venue is proper in the

Federal District Court in and for the Middle District of Alabama, Eastern Division, as the

acts complained of herein originated in Chambers and Macon Counties.

## II.    Jurisdiction

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

and 2201, for violation of Constitutional Rights, as provided for in Bivens v. Six

Unknown Named Agents of the Federal Bureau of Narcotics, 403 US 388 (1971);

jurisdiction pursuant to 28 U.S.C. §§ 1343 (a) (1), (2), (3) & (4), and 2201 for violation of

Constitutional Rights, as provided for in 42 U.S.C. § 1983, and jurisdiction pursuant to

28 U.S.C. § 1346 (b) for violations as provided for under the Federal Torts Claim Act.

Plaintiff seeks monetary damages, declaratory, and injunctive relief, as well as attorney

fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2678.

3.      Plaintiff seeks redress for violations of his constitutional rights to due

process of law, as defined under the Fifth and Fourteenth Amendments to the United

States Constitution; violation of his constitutional right prohibiting cruel and unusual

punishment, as defined under the Eighth Amendment to the United States Constitution;

violation of his constitutional right to court access, as defined under the First Amendment

to the United States Constitution, and retaliation for exercising his right to petition the

government for redress of grievances; violation of federal law, as defined under the Emergency Medical Treatment and Active Labor Act of 1986; violation of federal laws, as defined under the Veterans Access, Choice, Accountability Act (VACAA) of 2014, and the VA Mission Act of 2018; violation of the equal protection clause contained in the Fourteenth Amendment to the United States Constitution; violation of his right to the pursuit of happiness under the Alabama Constitution; and violation of federal law, as defined under the Whistle Blowers Act of 1989. Plaintiff seeks further redress, pursuant to a class action suit, regarding the unconstitutional enactment and illegal enforcement of Titles 38 CFR § 17.1002(d), and 38 U.S.C. § 1725(b)(2)(B), which mandate that disabled veterans under the sole financial and medical care of the Department of Veterans Affairs see a veteran's doctor once every two years. This unconstitutional law prevents disabled veterans from receiving medical treatment by overtaxing and burdening veteran hospitals and healthcare providers with patients who do not need medical attention. Moreover, the Department of Veterans Affairs is using this unconstitutional enactment illegally to incite hospital personnel to dump their patients in the street before they receive self-sustaining emergency room treatment. Finally, it is discriminatory in nature and conflicts with other federal laws, such as the Veterans Access, Choice, Accountability Act (VACAA) of 2014, and the VA Mission Act of 2018. Veterans in these federal programs do not legally qualify to have the VA pay for their emergency room treatment because their care comes from a doctor in the private sector, and not a veteran's healthcare provider as mandated under the letter of the law.

**III.    Identity of the Parties**

4.      Plaintiff, DONALD JONES, Pro Se, is a veteran who is totally dependant upon the Department of Veterans Affairs for his financial and healthcare needs, and resides in the city of Lanett, Chambers County Alabama.

5.      Defendant, ROBERT WILKIE, was at all times relevant to the allegations contained in this complaint, Secretary of the United States Department of Veterans Affairs.  President Trump nominated Robert Wilkie to serve as the Secretary of the United States Department of Veterans Affairs in May 2018 and the Senate confirmed his nomination on July 23, 2018.  He was sworn in on July 30, 2018.  Robert Wilkie also served as Acting Secretary of the Department of Veterans Affairs from March 28, 2018 to May 29, 2018.  In those positions, he was responsible for the overall management and supervision of all federal and state Department of Veterans Affairs, and its hospitals and personnel, and was acting within the nature and scope of his duties as Secretary of the United States Department of Veterans Affairs; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

6.      At all times relevant to the allegations contained herein, ROBERT WILKIE, as Secretary of the United States Department of Veterans Affairs, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

7.      Defendant, DAVID SHULKIN, was at all times relevant to the allegations contained in this complaint, Secretary of the United States Department of Veterans Affairs.  Defendant SHULKIN was the Secretary of the United States Department of Veterans Affairs from February 14, 2017 to March 28, 2018.  President Trump allegedly

fired Defendant SHULKIN in the latter part of March 2018 for misappropriation of federal funding and his failure to provide veterans with proper healthcare. During those times, he was responsible for the overall management and supervision of all federal and state Department of Veterans Affairs, and its hospitals and personnel, and was acting within the nature and scope of his duties as Secretary of the United States Department of Veterans Affairs; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

8.      At all times relevant to the allegations contained herein, DAVID SHULKIN, as Secretary of the United States Department of Veterans Affairs, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

9.      Defendant, LINDA BOYLE, was at all times relevant to the allegations contained in this complaint, Medical Center Director for the CAVHCS. The Secretary of the Department of Veterans Affairs designated her as Medical Center Director in the latter part of 2016. In that position, she was the senior member of the leadership team for the CAVHCS and was responsible for the overall administrative and clinical operations. She also supervised 1600 healthcare employees, and was acting within the nature and scope of her duties as Medical Center Director for the CAVHCS; at all times, for the purpose of this complaint, Defendant is being sued in both, her individual and official capacities.

10.     At all times relevant to the allegations contained herein, LINDA BOYLE, as Medical Center Director for the CAVHCS, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

11.     Defendant, CLYDE W. MARSH, was at all times relevant to the

allegations contained in this complaint, State Commissioner and Director of the Alabama Department of Veteran Affairs. He was the State Commissioner and Director of the Alabama Department of Veteran Affairs from October 2005 to November 2018. In that position, he was responsible for all administrative and executive duties of the Alabama Department of Veterans Affairs. In addition, he managed the agency's operations, coordinated mission execution and supervised 112 state employees in 67 counties, as well as over 900 contract health service providers. He also managed an agency budget of over $100 million, and was acting within the nature and scope of his duties as State Commissioner and Director of the Alabama Department of Veterans Affairs; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

12.     At all times relevant to the allegations contained herein, CLYDE W. MARSH, as State Commissioner and Director of the Alabama Department of Veteran's Affairs, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

13.     Defendant, JACQUELYNN LEWIS, was at all times relevant to the allegations contained in this complaint, Non VA Medical Care Chief. She has been an employee of the CAVHCS for at least seven years, and maintains an office at the CAVHCS in Tuskegee Alabama. In that position, she was responsible for the overall management and supervision of Non VA Medical Care personnel. In addition, she was to assist veterans with Non VA Medical Care treatment, including placement in the Choice Program, and was acting within the nature and scope of her duties as Non VA Medical Care Chief; at all times, for the purpose of this complaint, Defendant is being sued in

both, her individual and official capacities.

14.    At all times relevant to the allegations contained herein, JACQUELYNN LEWIS, as Non VA Medical Care Chief, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

15.    Defendant, SHARON HICKS, was at all times relevant to the allegations contained in this complaint, Non VA Community Care. In that position, she was responsible for the overall management and supervision of Non VA Community Care personnel. In addition, she was responsible for processing medical claims for services rendered in Non VA Medical Care facilities and private doctors, and was acting within the nature and scope of her duties as Non VA Community Care; at all times, for the purpose of this complaint, Defendant is being sued in both, her individual and official capacities.

16.    At all times relevant to the allegations contained herein, SHARON HICKS, as Non VA Community Care, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

17.    Defendant, CYNTHIA BLAND, was at all times relevant to the allegations contained in this complaint, VHA Office of Community Care. In that position, she was responsible for assisting veterans in receiving timely healthcare, including assisting veterans in being placed in Non VA Community Care Programs. In addition, she was responsible for the overall management and supervision of VHA Office of Community Care personnel, and was acting within the nature and scope of her duties as VHA Office of Community Care; at all times, for the purpose of this complaint, Defendant is being sued in both, her individual and official capacities.

18.     At all times relevant to the allegations contained herein, CYNTHIA BLAND, as VHA Office of Community Care, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

19.     Defendant, JANE CAMELLIA, was at all times relevant to the allegations contained in this complaint, a CAVHCS nurse.  In that position, she was responsible for supervising patient care and treatment, as well as approving or denying Non VA emergency room visits, and was acting within the nature and scope of her duties as a nurse; at all times, for the purpose of this complaint, Defendant is being sued in both, her individual and official capacities.

20.     At all times relevant to the allegations contained herein, JANE CAMELLIA, as a veteran's hospital nurse, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

21.     Defendant, JOHN DOE (1), was at all times relevant to the allegations contained in this complaint, a Birmingham VA Medical Center clerk.  In that position, he was responsible for carrying out various clerical duties for the Birmingham VA Medical Center, and was acting within the nature and scope of his duties as a clerk; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

22.     At all times relevant to the allegations contained herein, JOHN DOE (1), as a Birmingham VA Medical Center clerk, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

23.     Defendant, LEWIS A. UWAGERIKPE, was at all times relevant to the allegations contained in this complaint, a primary care veteran's doctor.  In that position,

he was responsible for prescribing treatment and medication to veterans at the CAVHCS, and was acting within the nature and scope of his duties as a primary care veteran's doctor; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

24.     At all times relevant to the allegations contained herein, LEWIS A. UWAGERIKPE, as a primary care veteran's doctor, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

25.     Defendant, RANDALL WEAVER, MD, was at all times relevant to the allegations contained in this complaint, a CAVHCS medical doctor.  In that position, he was a supervising medical doctor responsible for overseeing the scheduling of primary care appointments, and was acting within the nature and scope of his duties as a medical doctor; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

26.     At all times relevant to the allegations contained herein, RANDALL WEAVER, as a CAVHCS medical doctor, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

27.     Defendant, TERRY ANDRUS, was at all times relevant to the allegations contained in this complaint, President and CEO of EAMC.  In that position, he was responsible for the overall management and supervision of personnel at the East Alabama Medical Center, and was acting within the nature and scope of his duties as President and CEO of EAMC; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

28.     At all times relevant to the allegations contained herein, TERRY

ANDRUS, as President and CEO of EAMC, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

29.     Defendant, DAVID G. FAGAN, was at all times relevant to the allegations contained in this complaint, Chief of Staff at EAMC.  In that position, he was responsible for the direct supervision of personnel at East Alabama Medical Center, and was acting within the nature and scope of his duties as Chief of Staff; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

30.     At all times relevant to the allegations contained herein, DAVID G. FAGAN, as Chief of Staff at EAMC, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

31.     Defendant, JAMES ROBERT COBB, was at all times relevant to the allegations contained in this complaint, an emergency room medical doctor at EAMC.  In that position, he was responsible for evaluating and treating patients admitted to the hospital emergency room, and was acting within the nature and scope of his duties as an emergency room physician; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

32.     At all times relevant to the allegations contained herein, JAMES ROBERT COBB, as an emergency room medical doctor, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

33.     Defendant, EAST ALABAMA MEDICAL CENTER, Lanier, was at all times relevant to the allegations contained in this complaint a government owned and operated not-for-profit primary care hospital.  As an acute primary care hospital, it is a healthcare and emergency room facility, under the direct supervision and management of

Defendant Andrus, and was operating as a primary care and emergency room facility; at all times, for the purpose of this complaint, Defendant is being sued in its official capacity only.

34.    At all times relevant to the allegations contained herein, EAST ALABAMA MEDICAL CENTER, Lanier, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

35.    Defendant, JANE DOE (2), was at all times relevant to the allegations contained in this complaint, an EAMC business office clerk.  In that position, she was responsible for carrying out various clerical duties, and was acting within the nature and scope of her duties as a clerk; at all times, for the purpose of this complaint, Defendant is being sued in both, her individual and official capacities.

36.    At all times relevant to the allegations contained herein, JANE DOE (2), as an EAMC business office clerk acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

37.    Defendant, LINDA LYND, was at all times relevant to the allegations contained in this complaint, Medical Director of Emergency Physicians for EAMC.  In that position, she was responsible for overseeing and supervising emergency room personnel.  In addition, she was responsible for investigating complaints involving emergency room treatment, and was acting within the nature and scope of her duties as Medical Director of Emergency Physicians; at all times, for the purpose of this complaint, Defendant is being sued in both, her individual and official capacities.

38.    At all times relevant to the allegations contained herein, LINDA LYND, as Medical Director of Emergency Physicians for EAMC, acted under color of federal and

state laws, regulations, customs and policies, whether legal or illegal.

39.     Defendant, JOHN DOE (3), was at all times relevant to the allegations contained in this complaint, a CAVHCS employee.  In that position, he was responsible for carrying out various duties, and was acting within the nature and scope of his duties as an employee; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

40.     At all times relevant to the allegations contained herein, JOHN DOE (3), as a CAVHCS employee, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

41.     Defendant, JOHN DOE (4), was at all times relevant to the allegations contained in this complaint, Wisconsin Evidence Intake Center Regional Office Director. In that position, he was responsible for the overall management and operation of the Wisconsin Evidence Intake Center and was acting within the nature and scope of his duties as Regional Office Director; at all times, for the purpose of this complaint, Defendant is being sued in both, his individual and official capacities.

42.     At all times relevant to the allegations contained herein, JOHN DOE (4), as Wisconsin Evidence Intake Center Regional Office Director, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

43.     Defendant, JOHN DOE (5), was at all times relevant to the allegations contained in this complaint, an employee at the Wisconsin Evidence Intake Center.  In that position, he was responsible for investigating disability compensation claims and was acting within the nature and scope of his duties as an employee of the Wisconsin Evidence Intake Center; at all times, for the purpose of this complaint, Defendant is being

sued in both, his individual and official capacities.

44.     At all times relevant to the allegations contained herein, JOHN DOE (5), as an employee of the Wisconsin Evidence Intake Center, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

45.     Defendants, JOHN DOE (1-99), were at all times relevant to the allegations contained in this complaint, employees of either the EAMC or the Department of Veterans Affairs.  In those positions, they were responsible for carrying out various duties, and were acting within the nature and scope of their duties as employees; at all times, for the purpose of this complaint, Defendants are being sued in both, their individual and official capacities.

46.     At all times relevant to the allegations contained herein, JOHN DOE (1-99), as employees of the EAMC or the Department of Veterans Affairs, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

47.     Defendants, JANE DOE (1-99), were at all times relevant to the allegations contained in this complaint, employees of either the EAMC or the Department of Veterans Affairs.  In those positions, they were responsible for carrying out various duties, and were acting within the nature and scope of their duties as employees; at all times, for the purpose of this complaint, Defendants are being sued in both, their individual and official capacities.

48.     At all times relevant to the allegations contained herein, JANE DOE (1-99), as employees of the EAMC or the Department of Veterans Affairs, acted under color of federal and state laws, regulations, customs and policies, whether legal or illegal.

## IV.    Facts

49.    On April 10, 2017, Plaintiff felt weak in the knees, had severe dry mouth, excessive urination, a general lack of energy, dizziness, and blurred vision.  Plaintiff's condition had existed in varying degrees for nearly 5 months.

50.    Plaintiff called the CAVHCS in Tuskegee, but was unable to speak with a doctor.  It is the policy of the Department of Veterans Affairs (VA) that veterans not call the hospital for pre-approval of emergency room treatment.

51.    Aware that he could not speak to a doctor, Plaintiff followed the instructions given by the hospital automated medical advisory system and went to the nearest emergency room.  At no time did the automated medical advisory system inform Plaintiff that he would have to pay for his emergency room treatment.

52.    Absent there being a statement in the automated medical advisory system informing Plaintiff that he would be responsible for his emergency room treatment, there would be no reason for Plaintiff to believe that the Veterans Administration would make him pay for his emergency room visit.

53.    Plaintiff was enrolled in the veteran's healthcare program, he lived more than 40 miles from the nearest veteran's hospital, he was eligible to participate in the Veterans Choice Program, he was supported solely by a small veteran's pension, and he was suffering from a serious medical condition making it dangerous for him to drive to the CAVHCS in Tuskegee Alabama.   Plaintiff had no other recourse but to seek emergency room treatment.

54.    Plaintiff submits that the automated medical advisory system authorized

his emergency room treatment, as if a veteran's doctor had approved it; thereby overriding the 24-month statutory requirements set forth in 38 U.S.C. § 1725 and 38 U.S.C. § 17.10002 (d).

55.    As directed by the automated medical advisory system, Plaintiff drove approximately one mile to the Lanett Fire Station where an EMT first examined him. Plaintiff was diagnosed with hypertension and hyperglycemia.  Plaintiff's blood pressure was 220/100 and his glucose lever was 499 mg/dl.

56.    After being advised that he should seek immediate medical attention for his elevated blood sugar and blood pressure readings, Plaintiff drove another three miles to the East Alabama Medical Center in Valley Alabama.

57.    As Plaintiff was filling out the paperwork for emergency room treatment, he informed the admittance clerk to send the emergency room bill to the CAVHCS in Tuskegee for payment.  Instead of following Plaintiff's instructions, Defendant Doe (2) called Defendant Camellia for approval of Plaintiff's emergency room treatment.

58.    Defendant Camellia denied the request of Defendant Doe (2) to pay the hospital bill because Plaintiff had no authorization for the treatment and had not seen a veteran's doctor during the previous 24 months.  Plaintiff admits that he never used his VA medical benefits after being placed on a non-service related veteran's pension nearly ten years ago because he did not need medical attention.

59.    Defendant Camellia had no authorization to make any such determination. It was the responsibility of Defendant Lewis, Non VA Medical Care Chief to investigate and to make any such denial.

60.    Plaintiff was admitted to the emergency room on April 10, 2017.

61. Defendant Cobb was the emergency room attending physician. Defendant Cobb confirmed the diagnoses of the fire station EMT. Plaintiff's blood pressure was 172/133 and his blood sugar had risen to 596 mg/dl.

62. After three hours of minimal treatment, Defendant Cobb informed Plaintiff that he needed to be hospitalized for further treatment. Defendant Cobb spoke to Defendant Fagan about admitting Plaintiff.

63. Defendants Cobb and Fagan subsequently declined to admit Plaintiff because he was "not registered in the VA medical system and does not have a primary care physician" to approve further treatment or admittance to a hospital ward.

64. Contrary to medical records, Plaintiff has been enrolled in the VA healthcare program since July 1, 2013. Plaintiff's enrollment was automatically done because of his being on a non-service related veteran's pension. Plaintiff's pension is based upon his degenerative disc disease, and seventeen years of incarceration, which procedurally bared him from receiving Social Security disability benefits.

65. Plaintiff declares that Defendants Cobb and Fagan completely ignored his agreement with the hospital administration to pay for the emergency room treatment.

66. After being denied proper treatment for his newly diagnosed hypertension and hyperglycemia conditions, Plaintiff was released from the emergency room with a prescription for 20 mg of lisinopril, 500 mg metformin, and 50 mg of januvia.

67. Plaintiff's blood sugar was 286 mg/dl at the time of his release. This was two to three times what it should have been since Plaintiff had not eaten for nearly 6 hours at the time of his release.

68. Plaintiff was directed to have follow-up treatment with Defendant Fagan.

Defendant Fagan does not accept veterans as patients unless they can pay for his services out of their own pockets.

69.     Plaintiff believes that Defendants Cobb and Fagan deliberately dumped him in the street without adequate medical treatment in hope that Defendant Fagan would profit from Plaintiff's uncontrolled diabetic condition.  Plaintiff further believes that he would never have been dumped in the street if he had Medicaid, Medicare, or private insurance.

70.     Plaintiff declares that his right under the Emergency Medical Treatment and Active Labor Act of 1986 was violated when Defendants Cobb and Fagan denied him self-stabilizing treatment before dumping him in the street.

71.     Plaintiff declares further that Defendants Andrus, Lynd, Fagan, Camellia, Doe (2), and Cobb are all responsible for him being denied admitted to the EAMC and to receive proper medical treatment.  As a result, Plaintiff's glucose level rose to more than 1200 mg/dl causing him to suffer physical, mental, and emotional, pain and suffering.  In addition, Plaintiff suffered minor damage to his eyes, as well as having to be hospitalized for five days.

72.     It was discrimination for Defendants Fagan and Cobb to deny Plaintiff medical treatment because Defendant Camellia declined to approve and pay for his emergency room treatment.

73.     Contrary to medical records, Plaintiff's prescription for Januvia was never filled because it cost nearly $500. Defendants Cobb and Fagan knew that Plaintiff was on a veteran's pension. Defendants Cobb and Fagan should never have prescribed Plaintiff with such an expensive drug without first checking to see if he could afford the pay for

the medication.

74.    If Defendants Cobb or Fagan had provided Plaintiff with a vile of insulin, a diabetic test meter, and a few supplies, as was done when he was discharged for the EAMC in Opelika, Plaintiff would never have been hospitalized for a serious and life-threatening condition.

75.    At no time did Plaintiff receive adequate medical treatment while at the EAMC, in Valley Alabama, especially his primary complaints of frequent urination and having severe dry mouth. These medical conditions existed for nearly 5 months and could not be properly treated in just a few short hours.

76.    It has been medically proven that untreated dry mouth can exacerbate the side effects of diabetes, which will then lead to an increase in blood sugar level. This untreated condition, in conjunction with Plaintiff never being properly stabilized in the first place is why his blood sugar rose so quickly.

77.    On April 11, 2017, Plaintiff called the CAVHCS in Tuskegee for instructions on what to do now that he had been released from the EAMC in Valley Alabama. Plaintiff was told to bring his driver license, DD214, and proof of income to the veteran's hospital in Tuskegee. It took Plaintiff more than a day to locate a copy of his DD214 because of his feeling weak and sick.

78.    On April 13, 2017, Plaintiff drove to the CAVHCS in Tuskegee with the requested documentation. Plaintiff's glucose level was so high that it was life-threatening and hazardous for him to drive nearly 50 miles.

79.    Moreover, Plaintiff's car is extremely dangerous to drive and nothing but a death trap due to its dilapidated condition. Plaintiff cannot afford to purchase a good

used car because he barely has enough money to meet his day-to-day living expenses.

80.     After giving the documents to the admittance clerk, Plaintiff went to the clinic for treatment.

81.     Doctor Khalid Ali was assigned as Plaintiff's initial provider.

82.     Doctor Khalid Ali subsequently transferred Plaintiff, via ambulance, to the East Alabama Medical Center in Opelika, Alabama.

83.     Plaintiff's glucose lever had risen to 1223 mg/dl less than three days of him being denied admittance to the EAMC in Valley Alabama.

84.     There are numerous reports and articles that show blood sugar levels above 600 mg/dl can be extremely dangerous and life-threatening. A diabetic coma can occur when blood sugar levels rise above 600 mg/dl.

85.     Plaintiff submits that Defendants Wilkie, Shulkin, Boyle, Andrus, Fagan, and Cobb have adopted and continue to enforce an unwritten policy, which convey upon nurses the authority to deny veterans proper emergency room treatment and subsequent hospitalization.

86.     It is the official policy of the Veterans Administration that emergency room treatment be handled through the offices of Non VA Community Care, not hospital nurses.

87.     Although Defendant Doe (2) had the authorization to contact the CAVHCS for information on Plaintiff's status as a veteran, EAMC did not have the legal authority to deny him medical treatment based on information obtained from Defendant Camellia.

88.     Plaintiff declares that Defendants Camellia, Fagan, Cobb and Doe (2) were

Page 19

all instrumental in causing him to be put into a dangerous and very serious life-threatening situation. Nevertheless, Plaintiff's close encounter with death was ultimately caused because Defendants Shulkin, Boyle, and Andrus failed to supervise staff properly under their authority.

89.     Defendants Cobb, Fagan, Camellia, and Doe (2) are reprehensibly blameworthy for causing plaintiff's blood sugar to rise to such a point that it put him into a deadly situation. These Defendants had no justifiable reason to deny or interfere with Plaintiff being admitted to the EAMC and to receive proper medical treatment, especially where Plaintiff had a contract with the hospital to pay for the treatment of his hyperglycemia and hypertension conditions.

90.     The EAMC in Opelika received payment of $5682.48 for Plaintiff's five days of hospitalization. It is interesting that the EAMC in Opelika financially benefited from the EAMC in Valley dumping Plaintiff in the street. It was the EAMC in Valley Alabama who caused Plaintiff to be hospitalized in the first place. This is especially true where Plaintiff's emergency room treatment in Valley and his inpatient stay in Opelika were provided for in facilities under the direct supervision and management of Defendant Andrus.

91.     Plaintiff submits that it was misappropriation of federal funding to pay the EAMC nearly six thousand dollars for violating federal laws.

92.     On April 13, 2017, Plaintiff was admitted to the EAMC in Opelika.

93.     Thereafter, Plaintiff received a bill for his emergency room treatment at EAMC, in Valley Alabama. The bill demanded full payment of $1,009.92 and was dated April 21, 2017.

94.     Plaintiff ignored the hospital bill because he did not receive adequate medical treatment, and he believed the bill had been sent to the CAVHCS in Tuskegee.

95.     Significantly, Plaintiff's house, which he purchased on March 30, 2012, as a fixer upper, for $6000 is in need of repairs.  It has no air conditioning, no heat, and almost no furniture.  Plaintiff would have to stop all renovations on his house for three to four months to pay the hospital bill in full.

96.     Plaintiff alleges that Defendants have all caused him to suffer financial hardships that will eventually force him into a life of crime to survive.  Plaintiff cannot afford the services of a private doctor or the cost for his diabetic and other medications.

97.     Plaintiff has no other places to cut expenses.  Plaintiff does not smoke cigarettes, he does not take illegal drugs, he does not drink alcohol, he does not gamble, including lottery tickets, he does not eat out, he does not hire prostitutes, and he does not squander his money foolishly.  Plaintiff puts every spare penny from his small veteran's pension into making his house livable.

98.     On May 5, 2017, Plaintiff made a special trip to the veteran's hospital in Tuskegee, via the free shuttle bus from Valley Alabama.  The reason for the trip was to obtain information regarding the status of his outstanding hospital bill.  Plaintiff spoke to John Doe in the business office

99.     According to John Doe, the hospital bill in question was still under consideration.  John Doe deliberately lied to Plaintiff for unknown reasons.

100.    Upon returning home, Plaintiff called the EAMC in Valley Alabama, and was told that Defendant Camellia had denied the hospital's request for payment.  The grounds for the denial were listed as Plaintiff having no authorization for his ER visit and

had not seen a VA doctor during the previous 24 months.

101.    In a letter, dated May 8, 2017, Plaintiff wrote to the CAVHCS in Tuskegee for the necessary paperwork and procedure to follow for an appeal.  Plaintiff received no response to his letter.

102.    Around May 23, 2017, Plaintiff received another bill from the EAMC demanding full payment.  The bill was dated 5/21/17.

103.    On May 31, 2017, Plaintiff sent a FOIL request to the CAVHCS to obtain a copy of the official denial stating the grounds, which the VA relied upon to deny paying the hospital bill.  Once again, Plaintiff received no response to his letter.

104.    On June 7, 2017, Plaintiff received his first doctor's visit for follow up treatment since being released from the EAMC in Opelika on April 17, 2017.  Defendant Uwagerikpe was assigned as Plaintiff's primary care provider.  Plaintiff's second visit was not until November 20, 2017.

105.    Plaintiff submits that it was unjustifiable for him to wait nearly six months between visits and nearly two months for follow up treatment of his newly diagnosed diabetic condition.

106.    According to Defendant Uwagerikpe, the CAVHCS in Tuskegee employs only two full-time primary care doctors and this is why Plaintiff cannot get reasonable primary care doctor's appointments.

107.    Plaintiff declares that the gross understaffing of primary care physicians at the CAVHCS in Tuskegee has denied him access to proper medical care and treatment.  Two full-time physicians for thousands of veterans each month constitutes gross negligent medical treatment.

108.    It is estimated that around 400,000 veterans live in the State of Alabama out of the 23 million veterans currently living in the United States.

109.    If the CAVHCS in Tuskegee were not so grossly understaffed with primary care doctors, Plaintiff would not have suffered back and neck pains for nearly two months, and being unable to see the markings on the syringe to take his insulin shots.

110.    During his initial primary care doctor's visit, Plaintiff's chief complaint was the excruciating pain in his neck and back that was interfering with his daily lifestyle.

111.    Defendant Uwagerikpe told Plaintiff that he would take a picture of his back. Plaintiff never received that MRI to determine why he is in so much pain.

112.    Plaintiff admits that he has a preexisting back and neck problem that has resulted in him taking over the counter painkillers for nearly 10 years. However, this does not excuse Defendant Uwagerikpe from performing his duty to schedule an MRI to see if anything can be done to stop Plaintiff's reoccurring neck and back pain.

113.    After complaining about his need to see an eye doctor, Plaintiff went to see Defendant Lewis regarding his unpaid hospital bill. Plaintiff showed Defendant Lewis his FOIL request, dated May 31, 2017. Attached to the FOIL request were two hospital bills from EAMC, dated 4/21/17 and 5/21/17. Defendant Lewis made copies of Plaintiff's FOIL request, and the attached exhibits.

114.    On June 7, 2017, Defendant Lewis called the EAMC in Valley Alabama, which she put on speakerphone for Plaintiff to hear. According to an EAMC business office employee, Defendant Camellia had denied the hospital's request for payment.

115.    Defendant Lewis told the business office clerk to send the unpaid hospital bill to the CAVHCS in Tuskegee. Thereafter, Defendant Lewis sent the FOIL request to

Defendant Hicks, along with the two attached hospital bills.

116.   On June 30, 2017, Plaintiff had an appointment at the Tuskegee eye clinic. Plaintiff was given new glasses, which now included bifocals. Plaintiff did not wear bifocals prior to his blood sugar rising to more than 1200 mg/dl.

117.   On July 20, 2017, the EAMC sent Plaintiff another demand for payment of his hospital bill. The notice stated, "unless full payment is received within 30 days, your account will be forwarded to a collection agency."

118.   On July 25, 2017, Plaintiff called Defendant Hicks regarding his unpaid hospital bill. According to Defendant Hicks, the Veterans Administration did receive a bill for $1544.22 from the EAMC in Valley Alabama. Her records indicated that the hospital bill had been returned with a request that it be resubmitted with a copy of the medical records.

119.   Plaintiff submits that the CAVHCS in Tuskegee had all the relevant information pertaining to his emergence room treatment at EAMC in Valley from his inpatient stay at EAMC in Opelika.

120.   Defendant Hicks then informed Plaintiff that his claim had been sent to the Birmingham VA Medical Center.

121.   Plaintiff submits that the repeated transferring of his claim was done for retaliation and to interfere with him exhausting his administrative appeals in time to prevent his unpaid hospital bill being sent to a collection agency.

122.   Plaintiff declares that the court should make Defendants Wilkie, Shulkin, and Boyle solely responsible for the reparations due from the EAMC, because of their continued neglect over the past several years to supervise staff properly under their

authority.  As a result of their negligence, the CAVHCS has become a cesspool of filth, debauchery, and corruption, which led to the EAMC unlawfully dumping Plaintiff in the street without proper medical treatment.

123.    On July 28, 2017, Plaintiff sent a letter to Defendant Andrus regarding the inadequate medical treatment he received while at EAMC in Valley Alabama.

124.    Plaintiff forwarded a copy of the letter to Defendants Fagan, Lewis, Hicks, Birmingham business office personnel, and the EAMC business office personnel.

125.    Defendant Lynd investigated Plaintiff's complaint.

126.    Defendant Lynd failed to perform her lawful duty to report violations of hospital rules and regulations, and just covered up Plaintiff being illegally dumped in the street.

127.    In a letter, dated August 9, 2017, Kimberly S. McMakin, business office manager for EAMC informed Plaintiff that the Veterans Administration had denied their request for payment of his emergency room visit.  The letter stated,

> "The Medical Director of Emergency Physicians has review both your Emergency Room visit and your inpatient stay and determined that the care provided was medically appropriate. Veterans Administration was billed for both visits.  However, the ER visit on 04/13/17 (sic) was denied as non-authorized by Veterans Administration."

128.    The denial was based solely upon the phone conversation between Defendants Doe (2) and Camellia, and not the official decision of Defendant Bland.

129.    Thereafter, Plaintiff wrote to Legal Services of Alabama and the Legal Aid Society of Birmingham for assistance to compel the CAVHCS in Tuskegee to send him a copy of their official denial and the necessary paperwork to file an appeal.

130.   It is Plaintiff's position that he received an official decision only because the Legal Aid Society of Birmingham and Legal Services of Alabama had intervened to assist him.

131.   Plaintiff submits that Defendants have all caused him to suffer emotional, mental, and financial hardships, which ultimately forced him to stop receiving his diabetic medication. This prescription requires Plaintiff to make co-payments.

132.   On or about September 8, 2017, almost five months after the initial denial of Defendant Camellia, Plaintiff received an official decision from Defendant Bland. The denial was dated August 28, 2017, and stated, "Claim Denied - At the time the emergency treatment was provided, Veteran had not received VA treatment within the past 24 months prior to the emergency treatment. 38 CFR 17.1002(d). "

133.   On September 12, 2017, Plaintiff called the Birmingham VA Medical Center and spoke to Anita Doe, a business office employee.

134.   According to Anita Doe, Defendant Doe (1) made the denial, which was then sent to Defendant Bland for a signature and mailing. Plaintiff advances that it is a violation of lawful procedures to have clerks and nurses deny claims for payment of emergency room treatments.

135.   Plaintiff advances further that no avenues exist to consider hardship cases on an individual basis, such as Plaintiff, and no safe guards to protect veterans on low incomes. Otherwise, nurses and clerks would not be allowed to deny arbitrarily payments for emergency room visits.

136.   On or about October 16, 2017, Plaintiff received another denial from Defendant Bland allegedly for a doctor's bill from the EAMC in Valley Alabama. The

hospital bill was allegedly for $292.00 and the denial was dated September 22, 2017. The grounds for the denial were the same as the grounds listed in Defendant Bland's denial of Plaintiff's emergency room visit.

137.    Thereafter, the EAMC in Valley Alabama sent Plaintiff another bill, dated October 26, 2017 demanding full payment of $1,009.92.

138.    On November 5, 2017, Plaintiff filed a joint administrative appeal with the CAVHCS in Tuskegee regarding the denials from Defendant Bland, and various constitutional and federal law violations.

139.    After waiting nearly two months for a decision, Plaintiff sent Defendant Lewis an email to inquire about the status of his appeal. Defendant Lewis responded with a one-word email which stated "Approved." The email was dated January 16, 2018.

140.    Plaintiff never received a financial statement showing that the hospital bill for his emergency room visit was in fact paid and no statement denying any portion of his administrative appeal.

141.    Plaintiff waited several more months for an official decision in connection with his administrative appeal. At no time did Plaintiff receive a formal decision, and no paperwork to effect any further appeals in connection with his alleged constitutional and federal law violations.

142.    Defendants Lewis, Hicks and Bland were mandated by departmental policy to start automatically an appeal regarding any unresolved issues in Plaintiff's administrative brief.

143.    On November 20, 2017, Plaintiff instructed Defendant Uwagerikpe to suspend all medications imposing a co-payment to save money during his legal battles

with the EAMC, a collection agency, and the CAVHCS in Tuskegee. This was not only beneficial for Plaintiff, while fighting these battles, but it was also financially beneficial for the VA because it saved the government nearly ten thousand dollars for the cost of six months of insulin.

144. At the time, Plaintiff had enough insulin and high blood pressure medication to last until his primary care doctor's appointment on June 18, 2018. Instead of being thankful that Plaintiff saved the government money, Defendants Wilkie, Marsh, Weaver, Uwagerikpe, Boyle, and her entire leadership team, who are now defendants in this case, refused to assist Plaintiff in being put back on his medication.

145. Defendants Wilkie, Uwagerikpe, Boyle, as well as her entire leadership team were fully aware that Plaintiff needs six vials of insulin each month to maintain his diabetic condition. Plaintiff needs to take 129 units of insulin each day to maintain proper blood sugar levels.

146. All members of the CAVHCS leadership team are herein designated as Defendants Doe (6-10). Defendants are individually named below and will appear at the top in Plaintiff's amended civil complaint.

147. On November 16, 2017, Plaintiff received notification from Holloway Credit Solutions, LLC informing him that the EAMC had referred his unpaid hospital bill to them for collection.

148. Plaintiff submits that the EAMC had other options than to send his hospital bill to a collection agency, such as the Hill Barton Fund. Plaintiff's gross income was only $12,900 per year. Furthermore, Defendant Andrus knew that Plaintiff was appealing the denial of Defendant Camellia and he could have very easily waited until a

determination had been made on that appeal. Instead of waiting for a final decision on Plaintiff's appeal, Defendant Andrus authorized his staff to send the hospital bill to a collection agency for retaliation and to inflict further financial, mental and emotional pain and suffering on him.

149.    On or about June 13, 2018, Plaintiff discovered that the free shuttle bus in Valley Alabama was no longer making runs on Mondays to the CAVHCS in Tuskegee.

150.    On June 14, 2018, Plaintiff had to cancel his June 18, 2018, primary care doctor's appointment because he had no dependable means of transportation to make the 100 mile round trip.

151.    Thereafter, Plaintiff received a letter, dated June 18, 2018, from the CAVHCS in Tuskegee regarding his missed primary care doctor's appointment. A copy of that letter was sent to Defendant Weaver.

152.    On June 22, 2018, Plaintiff sent a letter to Defendant Weaver explaining why he had to cancel his primary care doctor's appointment. Plaintiff also stressed his need for an MRI because painkiller were not helping, and a financial statement showing that his emergency room bill was paid so that he could be put back on his diabetic and other medications.

153.    A copy of the letter was forwarded to Defendant Marsh. Defendants Marsh and Weaver both declined to respond or to act on Plaintiff's letter.

154.    Plaintiff declares that he is eligible to participate in Non VA Community Care Programs, such as Tricare and the Choice Program, but Defendants Wilkie, Boyle, Uwagerikpe, Lewis, Hicks, Bland, and Does (6-10) declined to assist him with placement in either of these federally funded programs.

Page 29

155. In refusing to provide Plaintiff with his life sustaining diabetic and high blood pressure medications, or to assist him in obtaining privatized healthcare through Tricare or the Choice Program, Defendants Uwagerikpe, Lewis, Hicks, Bland, and Does (6-10) have become co-conspirators with Defendants Wilkie and Boyle in their attempt to kill Plaintiff or force him into a life of crime to obtain his high blood pressure and diabetic medications.

156. Collusion to commit murder just to stop Plaintiff from petitioning the government to close down the CAVHCS East Campus is not only retaliatory in nature, but it is also a capital crime.

157. Plaintiff served in the military during the Vietnam War (1968-1971). After being honorably discharged from the Marine Corps, the United States Government bestowed upon him the right to receive lifetime medical treatment. Subsequent laws convey upon Plaintiff the right to be placed under the care of a private doctor and to be treated in a non VA medical facility if he lives more than 40 miles from the nearest VA hospital, or cannot receive a primary care doctor's appointment in a reasonable time period. Plaintiff lives almost 50 miles from the nearest VA hospital and he has never been given a reasonable primary care doctor's appointment.

158. Plaintiff submits that the enforcement of any Congressional Law that compels disabled veterans to pay for emergency room treatment for not seeing a veteran's doctor within two years is unconstitutional and grounds for a class action suit. Moreover, any law enacted by Congress that impedes, restricts, diminishes, subverts or abridges a veteran's guaranteed right to receive medical treatment without cost is illegal and non-enforceable.

159.     Plaintiff takes the firm stance that it is discrimination to compel disabled veterans to pay doctor and emergency room bills because they do not live next to a veteran's hospital where they can go to receive emergency room treatment free of charge. This unconstitutional law needs to be eradicated before a veteran ends up dead, or the Department of Veterans Affairs needs to start maintaining veteran hospitals in every state within 40 miles of each other. Veterans who live more than 40 miles from a veteran's hospital are legally entitled to privatized healthcare, under prevailing laws. Unfortunately, the VA has circumvented these laws by refusing to pay private doctors for their services. This has caused a tremendous shortage of private doctors who will take VA patients and is why staff at the CAVHCS has repeatedly failed to act upon Plaintiff's statements about living more than 40 miles from the nearest veteran's hospital.

160.     On July 25, 2018, Plaintiff wrote letters to the United States Board of Veterans Appeals, Robert Wilkie, Secretary of Department of Veterans Affairs, and Donald Trump, President of the United States of America. The purpose of the letters was to force Defendant Boyle into giving Plaintiff an appeal so that he could exhaust his constitutional and federal law violations.

161.     On September 7, 2018 at 9:45 AM, Plaintiff received a phone call from Ramon Holloway, who railed on him for filing complaints with the government. According to Mr. Holloway, it was Plaintiff's fault that no action was taken on his letters because he did not supply the claim numbers. As Plaintiff was looking for the claim numbers, Mr. Holloway and Plaintiff argued over his statement that he needed the claim numbers to find his appeal. The claim numbers were clearly stated on the email Plaintiff sent to Defendant Lewis, and that email was referenced in the letter to Defendant Weaver.

In addition, the CAVHCS has Plaintiff's mailing address and phone numbers making it very easy to locate any information on him with a computer search. Thereafter, Mr. Holloway hung up before Plaintiff had found the claim numbers.

162.   On or about September 15, 2018, Plaintiff received a letter from the Wisconsin Evidence Intake Center, dated September 10, 2018. It stated that the Wisconsin Evidence Intake Center had received Plaintiff's request to appeal the denial on his August 14, 2018 disability compensation claim. A copy of the letter was sent to the New York State Department of Veterans Affairs. Plaintiff has not lived in New York for ten years and he never requested anyone to appeal a disability compensation claim to the Wisconsin Evidence Intake Center or any other agency within the Department of Veterans Affairs. In fact, Plaintiff's administrative briefs make no mention whatsoever of a disability compensation claim, or a request to increase his existing veteran's pension.

163.   Defendant Doe (3) deliberately fabricated an appeal for a non existing disability compensation claim to delay Plaintiff further in accessing the court, and to terminate his existing veteran's pension for retaliation.

164.   In a letter, dated September 19, 2018, Plaintiff notified Defendants Doe (4) and Doe (5) that his administrative appeal had nothing to do with a disability compensation claim. Attached to the Plaintiff's letter was VA Form 21-098, which Defendant Doe (5) requested that he fill out, and return to Doe (4).

165.   Thereafter, Plaintiff sent a letter to Defendants Doe (4) and Doe (5) notifying them that this was his final attempt to administratively exhaust the statutory and constitutional violations in his original brief. The letter was dated September 30, 2018, and a 42-page civil complaint draft was attached as an addendum to Plaintiff's November

5, 2017 administrative appeal.

166.    In a letter, dated October 4, 2018, Defendant Doe (4) informed Plaintiff that his appeal would not be processed because it was incomplete and did not identify the specific nature of the disagreement.  Attached to the letter was the paperwork Plaintiff sent to the Wisconsin Evidence Intake Center on September 19, 2018, minus the six attached pages specifying the nature of his disagreement.  A copy of the letter was again sent to the New York State Department of Veterans Affairs.

167.    Although Plaintiff repeatedly requested a copy of the denial notification, dated August 14, 2018, no such document was ever sent to him. Without the denial notification, there would be no way for Plaintiff to reference any specific portion of it.

168.    On October 18, 2018, Plaintiff sent a formal complaint to Defendants Doe (4) and Doe (5) thoroughly explaining the background to his fabricated disability compensation appeal.  The complaint also served as an addendum to the addendum sent on September 30, 2018.  The 4-page complaint with exhibits contained 43 pages total.  A copy of the material was forwarded to Defendant Wilkie and the Secretary of the Wisconsin Department of Veterans Affairs.

169.    On November 11, 2018, Plaintiff sent a letter to Defendant Marsh declaring a political war on the CAVHCS for denying him treatment and medications. This war will eventually include internet and media coverage and will most likely continue for the rest of Plaintiff's life.  A copy of the 4-page letter with exhibits totaling 27 pages was also sent to Governor Key Ivey, and Defendant Wilkie.

170.    Thereafter, Plaintiff discovered that staff at the CAVHCS had lied to him again.  This time an unknown employee deceived Plaintiff into believing that Defendant

Marsh was the director of the CAVHCS in Tuskegee.

171.   In a letter, dated November 14, 2018, Governor Ivey forwarded Plaintiff's letter to Acting Commissioner Northcutt for action. Acting Commissioner Northcutt subsequently informed Plaintiff that the CAVHCS was under the purview of the United States Department of Veterans Affairs not the Alabama Department of Veterans Affairs.

172.   On November 15, 2018, Acting Commissioner Northcutt forwarded the letter sent to Defendant Marsh along with its attachments to Defendant Boyle for action.

173.   Plaintiff waited 45 days to see if Defendants Wilkie or Boyle were going to refer his letter to staff who could assist him in being put back on his medications, schedule an MRI, and assist him with placement in the Choice Program, or some other community based federal program. Plaintiff received no response and no action resulted from his formal complaint.

174.   The ongoing retaliatory actions of staff within the Department of Veterans Affairs have escalated to the point of being criminal in nature. Plaintiff expects Defendants employed with the Department of Veterans Affairs to oppose his political war to close down the East Campus of the CAVHCS, but to destroy his health through a denial of medication is inexcusable. Plaintiff is legally entitled to receive medical treatment and medication from the CAVHCS, or through privatized healthcare.

175.   Plaintiff has been struggling with high blood pressure and high blood sugar levels since he missed his primary care doctor's appointment back in June 2018. Plaintiff struggled with these two health related problems for nearly five months two years ago and it nearly caused his demise. Now Defendants Wilkie and Boyle are intentionally trying to achieve that result.

176.   On January 5, 2019, Plaintiff sent Defendant Boyle a letter with 140 pages of exhibits. In that letter, Plaintiff again stressed his disapproval of the retaliatory actions of staff employed with the CAVHCS, and her attempt to murder him. A copy of the letter with exhibits was sent to Defendant Wilkie, all 9 Congressional Representatives for the State of Alabama, Vice President Mike Pence, and Inspector General Michael Missal. The 4-page letter without exhibits was sent to Defendant Uwagerikpe, and the four members of the CAVHCS leadership team: Valerie Russell, Deputy Director (Doe 6), Thomas Huettemann, Associate Director (Doe 7), Robert Norvel, Acting Chief of Staff (Doe 8), and Carolyn CaverGordon, Associate Director (Doe 9). Janet L. Henderson has apparently replaced Robert Norvel as Acting Chief of Staff (Doe 10).

177.   Plaintiff's letters to the nine Alabama Congressional Representatives and the VA Inspector General included a request for an investigation of both the state and federal Department of Veterans Affairs regarding their corruption, abuse of veterans, mismanagement of federal funding, and their refusal to help a disabled veteran receive his medications.

178.   Plaintiff also petitioned the Congressional Representatives to eradicate or at least modify the 24-month statutory enactment mandating that disabled veterans, under the exclusive financial and medical care of the VA, see a veteran's doctor once every two years to receive free emergency room treatment.

179.   Plaintiff received absolutely no response to his January 5, 2019 letter from any of the 18 individuals, except Congressman Robert Aderholt. Congressman Aderholt declined to consider Plaintiff's request because he did not live in his congressional district.

180.    Plaintiff declares that he will never be allowed treatment through any CAVHCS because of his numerous complaints and pending civil action. Plaintiff also declares that Defendants at the CAVHCS consider him a Whistle Blower and this is why they refuse to answer his letters or to assist him in any way. Defendants silence over the past two years is a form of retaliation, and clearly shows their callous indifference toward Plaintiff's medical needs.

181.    In a letter, dated February 13, 2019, Timothy Miller, Acting Director of Congressional Correspondence (Doe 11), stated:

> "Our Office of Community Care (OCC) reviewed the claims from East Alabama Medical Center and EAMC ER Physicians for medical services provided to you on April 10, 2017, and denied them under the Veterans Millennium Healthcare and Benefits Act (Title 38 United States Code § 1725) because you did not receive care at a VA medical facility within the preceding 24 months....OCC conducted a second review and upheld the original denial."

Plaintiff submits that Defendant Doe (11) acted in a retaliatory manner where he confirmed the denials of Defendant Bland after his administrative brief had already been approved at the facility level.

182.    At no time did Plaintiff receive any notification that Jacquelynn Lewis, Sharon Hicks or Cynthia Bland had requested a review of their approval of his administrative brief, nor did he receive any decision regarding that alleged second review. Instead of conducting a proper investigation of Plaintiff's administrative appeals Defendant Doe (11) simply upheld an illegal hearing to overturn the approval of Plaintiff's administrative brief.

183.    Plaintiff submits that Defendant Doe (11) has suppressed his First Amendment right by illegally upholding the denials of Defendant Bland. Plaintiff

submits further that the investigations conducted by the Office of Non VA Community Care, and Defendant Doe (11) constituted an appeal, which fully exhausted Plaintiff's original brief, and his two subsequent addendums. Plaintiff's administrative brief, dated November 5, 2017, clearly stated on the cover page that his appeal was for statutory and constitutional violations, not just a denial to pay for his hospital bills at the EAMC in Valley AL.

184.    Plaintiff submits that it was a violation of his rights to due process of law, as defined under the Fifth and Fourteenth Amendments to the United States Constitution, for Defendant Doe (11) to conduct an investigation and then overturn the year old approval of his administrative appeal. Plaintiff's administrative appeal was handled through the offices of Defendants Lewis, Hicks and Bland at the CAVHCS and any appeals from their decision were to be done through the Board of Veteran Appeals in Washington DC, not some Office of Community Care in Denver, CO.

185.    Plaintiff submits that the attempt of Defendant Doe (11) to compel him to pay for his April 10, 2017 emergency room treatment, as mandated under Titles 38 CFR § 17.1002(d), and 38 U.S.C. § 1725(b)(2)(B), is time barred and non enforceable as a matter of law.

186.    On February 25, 2019, Plaintiff sent letters to all Congressional Representatives in the States of AK, AR, AZ, and CA requesting they modify their unconstitutional enactment mandating the disabled veterans see a veteran's doctor once every two years. Plaintiff has yet to receive a response to any of his 75 plus letters.

187.    On February 25, 2019, Kevin Bell from the Montgomery VA Office called Plaintiff and agreed to have Jacquelynn Lewis send him a statement declaring that his

emergency room bill has in fact been paid in full. In addition, Kevin Bell agreed to help Plaintiff with transportation to see Joseph Hurst, his new primary care doctor in Tuskegee, and to arrange for him to be put under the care of a local doctor. Kevin Bell has yet to fulfill his promise, even though he knows that Plaintiff has been denied his life sustaining diabetic and high blood pressure mediations for more than eight months now at the expense of his health.

**Causes of Action**

**VI.    First Cause of Action**

188.    Plaintiff files this first cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 187, as if fully set forth herein as the first cause of action.

189.    Plaintiff alleges that Defendants Wilkie, Skulkin, and Boyle have all causes the CAVHCS to become a place of retaliation, abuse, and corruption because of their failure to train and properly supervise staff under their authority.

190.    Defendants Wilkie and Shulkin were both direct supervisors of Defendant Boyle, also knows as the Queen of the Central Alabama Veterans Hit Squad (CAVHS).

191.    In refusing to properly supervise Defendant Boyle, Defendants Wilkie and Shulkin not only covered up her corrupting the CAVHCS, but they are also encouraging staff under her control to carry out acts of retaliation against anyone who is a whistle blower or is attempting to petition the government for redress of grievances.

192.    In failing to train and properly supervise staff under her authority,

Defendant Boyle has relegated Plaintiff to a life of pain and suffering from the callous indifference that Defendants Uwagerikpe, Camellia, Lewis, Hicks, Weaver and Bland have demonstrated toward his medical needs.

193.   The refusal of Defendants Wilkie, Boyle Uwagerikpe, Lewis, Hicks, Weaver and Bland to assist Plaintiff with his medical needs through the CAVHCS or through privatized healthcare will eventually cause extensive damage to his internal organs and possibility even his death.

194.   In denying Plaintiff his insulin and high blood pressure medications for an extended period of time, Defendants will eventually cause him to suffer a heart attack or stroke, especially now that he is in his late sixties.

195.   Plaintiff alleges that Defendants Wilkie, Shulkin, Boyle Uwagerikpe, Lewis, Hicks, Weaver, Bland and Doe (6-10) have all violated state and federal criminal laws prohibiting the crime of attempted murder, as well as the Equal Protection Clause contained in the Fourteenth Amendment to the United States Constitution.

196.   Plaintiff declares that Defendants believe they are so far above the law they can even commit murder, without any fear of criminal charges being filed against them or sanctioning being imposed by our justice system.  Accordingly, the CAVHCS in Tuskegee needs to be closed down before someone ends up dead, mainly Plaintiff!

## VII.   Second Cause of Action

197.   Plaintiff files this second cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 196, as if fully set

forth herein as the second cause of action.

198.    Plaintiff alleges that Defendants Wilkie, Boyle, Marsh, Andrus, Fagan, Cobb, Weaver, Uwagerikpe Camellia, Lewis, Hicks, Bland, Doe (1), and Doe (2) have all inflicted cruel and unusual punishment of him, in violation of his Eighth Amendment Constitutional Right.

199.    Although cruel and unusual punishment is traditionally applied to medical cases involving prisoners, it does extent to the private sector, where as here, Plaintiff is under the exclusive financial and medical care of the Department of Veterans Affairs. Under these circumstances, Plaintiff has the same right as any pre-trial detainee who has not yet been convicted of a crime.

200.    Defendants Marsh and Weaver initially exposed Plaintiff to cruel and unusual punishment, where they ignored his letter regarding his need to be put back on his diabetic and high blood pressure medications and for an MRI to determine the reason for his excruciating neck and back pains. Defendant Uwagerikpe knew that Plaintiff was suffering neck and back pain that was interfering with his sleeping and daily routine. Yet, Defendant Uwagerikpe circumvented his duty to schedule an MRI until the day he was removed, for unknown reasons, as Plaintiff's primary care doctor.

201.    Defendants Fagan, Cobb, Camellia, and Doe (2) violated his Eighth Amendment constitutional right, where they caused him to be dumped in the street, nearly resulting in his death.  Plaintiff attests that it was cruel and unusual punishment for Defendants Fagan, and Cobb to throw him in the street without self-stabilizing treatment or medication because Defendants Camellia, and Doe (2) had agreed that he had no authorization for his emergency room visit. Defendants Fagan, Cobb, Camellia and Doe

(2) knew that Plaintiff did not need the approval of the VA to receive emergency room treatment or admittance to a hospital ward.

202.    Defendants Wilkie, and Boyle, have exposed Plaintiff to a long and painful existence from their refusal to assist him with medical treatment and medications. Plaintiff has vehemently insisted that Defendants Wilkie and Boyle schedule him for an MRI to alleviate his ongoing neck and back pain and to assist him in being put back on his diabetic and other medications.

203.    As seen by a reading of the record, Defendants Wilkie, Shulkin, Boyle Uwagerikpe, Lewis, Hicks, Weaver and Bland were all instrumental to one degree or another in trying to murder Plaintiff, or to force him into a life of crime. All Defendants who read Plaintiff's November 5, 2017 administrative appeal or have a copy of that brief know that he was in prison, which they are trying to achieve once again.

204.    Plaintiff submits that the denials of Defendants Wilkie, Shulkin, Boyle Uwagerikpe, Camellia, Lewis, Hicks, Weaver and Bland to provide him medical treatment and medication constituted cruel and unusual punishment in violation of his Eighth Amendment Constitutional Right. Plaintiff has been suffering excruciating neck and back pain for nearly two years and being sick daily from having no medication for the past eight months. Plaintiff declares that his health will dramatically deteriorate in the future because of what Defendants are now unlawfully doing to him.

205.    In the event that Defendants Wilkie, Shulkin, Boyle Uwagerikpe, Lewis, Hicks, Weaver and Bland do not succeed in murdering Plaintiff, their persistent refusal to provide him with treatment and mediation will eventually force him into a life of crime. It is cruel and unusual punishment to destroy Plaintiff's health to coerce him into

committing crimes to obtain the money to pay for an MRI and his life sustaining medications.

206.    It is sad that Defendants Wilkie, Boyle, Marsh, Andrus, Fagan, Cobb, Weaver, Uwagerikpe Camellia, Lewis, Hicks, Bland, Doe (1), and Doe (2) were only concerned with receiving a paycheck, rather than performing their legal and lawful duties to provide treatment and medication to suffering veterans.

## VIII.   Third Cause of Action

207.    Plaintiff files this third cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 206, as if fully set forth herein as the third cause of action.

208.    Plaintiff alleges that Defendants Wilkie, Boyle, Uwagerikpe Lewis, Hicks, and Bland, have all violated his right under the Veterans Access, Choice, Accountability Act of 2014, and the VA Mission Act of 2018, where they ignored his administrative appeal and letters stressing his immediate need for assistance in being placed in one of these federally funded programs.

209.    The record shows that Plaintiff lives more than 40 miles from the nearest VA hospital and that he has never received a reasonable primary care doctor's visit. These two criteria are independent grounds, each qualifying Plaintiff to participate in Tricare or the Choice Program.

210.    Defendants Lewis, Hicks, and Bland, all work to one degree or another in offices, which oversee Non VA Community Care, including the Choice Program, as well

as being responsible for handling administrative appeals involving community care.

211.   In addition, Plaintiff sent Defendant Wilkie hundreds of documents, including a copy of his administrative appeal, dated November 5, 2017, and its two addendums stressing his need to participate in the Choice Program.   In the letter that accompanied that appeal, dated July 25, 2018, Defendant Wilkie was asked to order Defendant Boyle to instruct Defendants Lewis, Hicks, or Bland to send Plaintiff an official decision on his alleged constitutional and federal law violations and the paperwork to appeal any of those issues to the next level.

212.   Instead of providing Plaintiff with a proper appeal, as mandated under the law, Defendant Boyle instructed Defendant Doe (3) to fabricate a disability compensation claim and then send it to Wisconsin Evidence Intake Center.

213.   In failing to provide Plaintiff with an appeal, except for the one that Defendants Boyle and Doe (3) fabricated for retaliation, Defendants Wilkie, Boyle, Lewis, Hicks, and Bland caused him to suffer prolonged physical, mental, and emotional pain and suffering from having no diabetic and high blood pressure medications.

214.   Moreover, Defendants Wilkie, Shulkin, and Boyle have all violated Plaintiff's right to participate in the Choice Program, where they have mismanaged federal funding to such an extent that Alabama veterans, like Plaintiff, are being categorically denied access to the Choice Program to save money.

215.   Rather than to assist Plaintiff with transportation, or to put him under the care of a private doctor, Defendants simply sidestepped their legal obligations to provide Plaintiff with medical care and just denied his statutory right to see a doctor or to obtain his life sustaining prescription medications.

## IX.    Fourth Cause of Action

216.    Plaintiff files this fourth cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 215, as if fully set forth herein as the fourth cause of action.

217.    Plaintiff alleges that Defendants Wilkie, Shulkin, and Boyle have violated the Emergency Medical Treatment and Active Labor Act of 1986, and departmental policies and procedures by allowing nurses to deny emergency room treatment.   In allowing Defendant Camellia to deny Plaintiff self-stabilizing emergency room treatment and subsequent hospitalization, Defendants Wilkie Shulkin, and Boyle caused Plaintiff to suffer physical, mental, and emotional pain and suffering.

218.    Defendant Camellia had no legal right to interfere with Plaintiff being hospitalized for his uncontrolled diabetic condition.  She should have told Defendant Doe (2) to stabilize Plaintiff and then send the emergency room bill to the Office of Non VA Community Care in Tuskegee, AL.

219.    In failing to follow departmental policies and procedures, Defendants Wilkie, Shulkin, and Boyle caused the EAMC to deny Plaintiff proper emergency room treatment.   In causing Plaintiff to be dumped in the street, without self-stabilizing treatment, Defendants Wilkie and Boyle have violated state and federal laws, including the Emergency Medical Treatment and Active Labor Act of 1986.

## X.    Fifth Cause of Action

220.    Plaintiff files this fifth cause of action pursuant to 42 U.S.C. § 1983 and

403 US 388 (1971), and alleges and incorporates paragraphs 1 through 219, as if fully set forth herein as the fifth cause of action.

221.    Plaintiff alleges that Defendants Wilkie, and Boyle have violated his rights to due process law, as defined under the Fifth and Fourteenth Amendments to the United States Constitution, where they failed to pay him money damages he won on his administrative appeal.

222.    Although this issue may appear silly on its face, it, nevertheless, does have merit because the courts traditionally follow the approvals rendered on administrative appeals.   In denying this cause of action, both of Plaintiff's subsequent addendums become actionable because they were submitted within the one year time period.

223.    On November 5, 2017, Plaintiff filed an administrative appeal regarding EAMC dumping him in the street and the VA not paying his hospital bills. The appeal also alleged several other statutory and constitutional violations.

224.    In an email, dated January 16, 2018, Defendant Lewis informed Plaintiff of the approval of his administrative appeal.   It was the responsibility of Defendants Lewis, Hicks and Bland to initiate an appeal automatically on any unresolved issues contained in the brief.   No automatic appeals were ever initiated by any employee of the Department of Veterans Affairs, except for the clandestine appeal perpetrated by Defendant Doe (11).

225.    Thereafter, Plaintiff went to great lengths to obtain a statement, as to how to interpret the word "Approval" in the email.  Plaintiff wrote letters to a host of people, including Defendants Wilkie, Marsh, Boyle, the Board of Veterans Appeals, and even the President of the United States.   Plaintiff wrote those letters to request assistance in

compelling staff at the CAVHCS to start an appeal on any unresolved issues in his administrative brief. The President was the only one who tried to help Plaintiff.

226.    At no time did Defendants Lewis, Hicks, and Bland dispute any facts in Plaintiff's brief nor did they start an appeal regarding his alleged statutory and constitutional issues. Under these circumstances, it must be construed that the approval notice from Defendant Lewis was a concession to the relief sought in the brief, as well as the requested monetary damages.

227.    Taking into consideration that Plaintiff received no denial notice on any portion of the brief and no paperwork to appeal for more than six months, as mandated by departmental policy, Plaintiff is now due millions of dollars in damages.

228.    Thereafter, Plaintiff submitted two addendums, dated September 30, 2018, and October 18, 2018 to his original November 5, 2017 appeal.

229.    Plaintiff declares that he is legally entitled to the money damage specified in his original administrative appeal, and that Defendants Wilkie and Boyle are violating his due process constitutional rights by depriving him those monies. Otherwise, Plaintiff is legally entitled to the damages in his two addendums because no appellate review conducted by the Office of Community Care or Defendant Doe (11) disputed any allegation in either of them, except to uphold the unconstitutional mandate that disabled veterans pay for their own emergency room treatments.

## XI.    Sixth Cause of Action

230.    Plaintiff files this sixth cause of action pursuant to 42 U.S.C. § 1983 and

403 US 388 (1971), and alleges and incorporates paragraphs 1 through 229, as if fully set forth herein as the sixth cause of action.

231.    Plaintiff alleges that the callous indifference demonstrated by Defendants Wilkie, Boyle, Marsh, Weaver, Uwagerikpe Camellia, Lewis, Hicks, Bland, and Doe (1) toward his medical needs will eventually force him into a life of crime to receive medical treatment or to just survive.

232.    Although Plaintiff may be eligible to receive Social Security benefits, his Social Security check would barely cover the co-payments for his monthly medications. This would leave Plaintiff with little money to live on since the Veterans Administration would cut his monthly pension in half, and maybe even terminate it completely. In trying to force Plaintiff to embark on a life of crime, these Defendants have violated his right to equal protection of the law and the due process of law clauses contained in the Fifth and Fourteenth Amendments to the United States Constitution.

233.    Significantly, Plaintiff already has a big attitude toward society, especially those in the justice system. Plaintiff lost his business, his children, his health, and the most productive years of his life, because of judicial misconduct and court corruption.

234.    After being maliciously prosecuted for crimes he did not commit, Plaintiff was unjustly sentenced to an $8^{1}/_{3}$ to 25-year term of imprisonment for attempted murder. As a first time felony offender, Plaintiff served more than 17 years in prison and four additional years on parole supervision. Plaintiff does not deny that he should have been convicted for second-degree assault, a $2^{1}/_{3}$ to 7 year term of imprisonment. Unfortunately, Plaintiff was never charged with this crime nor was he offered any plea bargain before or during trial.

235.   In light of Plaintiff's mindset, Defendants continuing to fuel the fire, which burned him thirty years ago, may result in consequences that neither Plaintiff nor society needs or wants.   It is only staff within the Department of Veterans Affairs who desires such an outcome.

## XII.   Seventh Cause of Action

236.   Plaintiff files this seventh cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 235, as if fully set forth herein as the seventh cause of action.

237.   Plaintiff alleges that Defendants Wilkie, Boyle, Doe (3), Doe (4), and Doe (5) have all violated his right to court access, as defined under the First Amendment to the United States Constitution, where they covered up the attempt of Defendant Doe (3) to strip Plaintiff of his veteran's pension for retaliation.

238.   On November 5, 2017, Plaintiff filed an administrative appeal with the CAVHCS in Tuskegee Alabama.   Approximately one year later, Defendant Doe (3) fabricated a disability compensation claim to remove Plaintiff from his existing veteran's pension for retaliation, and to impede his right to court access.

239.   Plaintiff has made numerous requests to various people, including Defendants Wilkie, Boyle, Doe (4) and Doe (5) for a copy of the denial notification, dated August 14, 2018, and the name of the employee who generated it.   At the same time, Plaintiff requested the names of the Wisconsin Evidence Intake Center Regional Office Director, and the employee who was assigned to handle the fabricated disability

compensation claim.

240.    In denying Plaintiff documentation pertaining to an existing administrative appeal, and the names of Defendants Doe (3), Doe (4), and Doe (5), Defendants Wilkie, Boyle, Doe (4) and Doe (5) are forcing him to file an amended civil complaint in federal court after obtaining this information through discovery.   This amounts to nothing less than harassment and an attempt to obstruct Plaintiff's civil rights suit.

241.    Plaintiff submits that Defendants Wilkie and Boyle covered up the retaliatory and criminal actions of Defendant Doe (3) to prevent Defendants Doe (3), Doe (4) and Doe (5) from being sued under any cause of action.

## XIII.   Eighth Cause of Action

242.    Plaintiff files this eighth cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 241, as if fully set forth herein as the eighth cause of action.

243.    Plaintiff alleges that Defendant Boyle has violated statutory and federal laws from her continually wasting federal funds.   Furthermore, it is a violation of the Patient Protection and Affordable Care Act and the statutory law of the Internal Revenue Service (IRS) for the VA to file false paperwork with the IRS each year declaring that Plaintiff had medical coverage.   Plaintiff has been repeatedly denied his statutory and constitutional rights to receive medical care, and medication through the CAVHCS.

244.    Plaintiff alleges that Defendant Boyle has caused a shortage of primary care physicians from her years of mismanaging federal funding.   In creating this shortage,

veterans, including Plaintiff, are being denied timely access to primary care doctors, medications, and proper medical care.

245. The gross mismanagement of federal funding by Defendant Boyle is now to such an extent that there is no longer any money available for veterans to participate in federal programs offered by the Department of Veterans Affairs. Moreover, Defendant Boyle has violated other federal laws, and governmental regulations, as well as subverting the goals of the Veterans Administration to provide veterans with proper and adequate medical care. In simple terms, Defendant Boyle has absolutely no regard for the medical needs of veterans under her care and no respect for our system of laws

## XIV. Ninth Cause of Action

246. Plaintiff files this ninth cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 245, as if fully set forth herein as the ninth cause of action.

247. Plaintiff alleges that he will never receive proper medical treatment at any Central Alabama Veterans HealthCare facility because Defendants Wilkie, Boyle, Weaver, Uwagerikpe Camellia, Lewis, Hicks, Bland, and Doe (3) consider him to a whistle blower.

248. Although Plaintiff is not an employee of the Central Alabama Veterans HealthCare System, he, nevertheless, meets the requirement to be protected under the Whistle Blower Protection Act of 1989. Plaintiff advances that the Veterans Administration is an extension to his military service and that being under the sole

financial and medical care of the Veterans Administration is no different from an employee of the Department of Veterans Affairs who is on a retirement pension.

249.   Plaintiff alleges further that the Whistle Blower Act of 1989 is unconstitutional because it discriminates against individuals, like Plaintiff who are under the financial and medical care of the United States Federal Government, and cannot file for protection or an investigation under this law.

250.   As a result of Plaintiff being classified as a whistle blower and having no agency to address or investigate his being treated as a whistle bower, he is left with no other recourse but to pursue a political campaign to close down the CAVHCS in Tuskegee.   The only way that Plaintiff will ever be able to obtain proper medical treatment and medication is through the private sector.

251.   Plaintiff submits that Defendants have violated his right, under the Whistle Blower Protection Act of 1989, as well as other federal laws, where they all acted in a retaliatory manner because he was filing complaints against the CAVHCS with government officials.   These retaliatory actions are shown throughout this complaint where Defendants have denied Plaintiff medical attention, including an MRI, persisted in trying to kill him from a denial of medications for months, denied him access to federally funded programs, subjected him to a harassing phone call, tried to force him into a life of crime, fabricated a disability compensation claim, ignoring his repeated endeavors to exhaust his administrative appeal, and the belated attempt to force him into paying for his emergency room treatment.

## XV.  Tenth Cause of Action

252.  Plaintiff files this tenth cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 251, as if fully set forth herein as the tenth cause of action.

253.  Plaintiff alleges that the statutory requirements under 38 U.S.C. § 1725 and 38 U.S.C. § 17.10002 (d), mandating that disabled veterans see a veteran's doctor once every two years is unconstitutional in nature, and violates the Fourteenth Amendment to the United States Constitution, the Veterans Access, Choice, Accountability Act of 2014, and the VA Mission Act of 2018.

254.  Plaintiff submits that the two campuses of the CAVHCS are approximately 40 miles apart and located in black communities.  The CAVHCS in Tuskegee was originally built to treat backs only and has the highest percentage of African Americans in the State of Alabama.  It is racial discrimination for the Department of Veterans Affairs to maintain two veteran hospitals next to each other, where black veterans can go for emergency room treatment at no cost, while Whites and Causations are relegated to seeking emergency room treatment in the private sector at their own expense.

255.  It is clear that the CAVHCS now operates as a federal work program for black communities, and not as a racially diverse staffed hospital to treat suffering and disabled veterans of all races.

256.  Plaintiff declares that veterans, who are solely dependant upon the Department of Veterans Affairs for their financial and medial care, should be exempt

from paying any emergence room visit, irrespective of whether or not their emergency room treatment was for a service related injury. This becomes especially true where staff at the CAVHCS is using this unconstitutional enactment illegally to incite privatized healthcare personnel to dump their patients in the street before they receive self-sustaining emergency room treatment.

257.   Plaintiff declares further that any Congressional Act, which prevents suffering veterans from receiving proper medical treatment by overtaxing and burdening veteran hospitals and healthcare providers with patients, who do not need medical attention is non enforceable. To mandate that nearly 400,000 Alabama veterans see a veteran's doctor once every two years has, in part, caused Plaintiff to be denied an MRI, medication, and medical attention. As a result, Plaintiff's health and life is being slowly stripped from him in violation of his Fifth, Eighth, and Fourteenth Amendment Rights to the United States Constitution.

258.   Furthermore, it is mismanagement of federal funding to pay hospital personnel to treat veterans, who do not need medical attention, while at the same time denying disabled veterans reasonable doctor visits to treat their existing medical conditions. Running a black community federal work program under the guise that it is a veterans hospital serving all veterans in the State of Alabama is discrimination, as well as violating state and federal employment laws.

259.   Finally, this unconstitutional enactment conflicts with other federal laws, such as the Veterans Access, Choice, Accountability Act of 2014, and the VA Mission Act of 2018. Veterans in these federal programs do not legally qualify to have the VA pay for their emergency room treatment because their care comes from a doctor in the

private sector, and not a veteran's healthcare provider as mandated under the letter of the law.

260. For all the foregoing reasons, Plaintiff should be monetarily compensated for discrimination and assigned counsel to pursue a class action suit against the United States Department of Veterans Affairs for enforcing an unconstitutional Congressional Enactment.

## XVI. Eleventh Cause of Action

261. Plaintiff files this eleventh cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 260, as if fully set forth herein as the eleventh cause of action.

262. Plaintiff alleges that Defendants Wilkie and Boyle have violated the due process clauses under the Fifth and Fourteenth Amendments to the United States Constitution, where they adopted a policy of instructing veterans to go to an emergency room for treatment and then forcing them to pay for that emergency room visit.

263. Plaintiff alleges that the CAVHCS automated medical advisory system instructing veterans to go to the hospital constitutes authorization for their emergency room treatment, as if a veteran's doctor had approved it. The CAVHCS practice of instructing veteran to go to the emergency room for treatment, and then mandating that they pay for the emergency room visit deprives them of monies in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

264. Plaintiff submits that the CAVHCS policy of authorizing Non VA Medical

Care and then compelling veterans to pay for that care is further grounds for a class action suit, not only against the United States Department of Veterans Affairs, but also against the CAVHCS.

## XVII.  Twelfth Cause of Action

265.    Plaintiff files this twelfth cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 264, as if fully set forth herein as the twelfth cause of action.

266.    Plaintiff alleges that Defendants Lewis, Hicks, Bland, and Doe (1) have all violated his constitutional right, as defined under the First Amendment to the United States Constitution, where they failed to provide him with an official decision on his administrative appeal, and the forms and paperwork to appeal to the next level.

267    Plaintiff declares that Defendants Lewis, Hicks, and Bland were legally responsible to appeal automatically any unresolved issues contained in his administrative brief, or at the very least, provide the name and address of the agency where Plaintiff could further appeal to exhaust his constitutional and federal law violations.

268.    In failing to initiate an appeal, or to provide Plaintiff with the necessary forms and paperwork to pursue an appeal, Defendants have suppressed his First Amendment Constitutional Right to court access.  The clandestine appeals allegedly conducted without Plaintiff being notified or given the opportunity to submit documentation are non enforceable

## XVIII.   Thirteenth Cause of Action

269.    Plaintiff files this thirteenth cause of action pursuant to 42 U.S.C. § 1983, and alleges and incorporates paragraphs 1 through 268, as if fully set forth herein as the thirteenth cause of action.

270.    Plaintiff alleges that Defendant EAMC has violated the Emergency Medical Treatment and Active Labor Act of 1986, where it maintains an unwritten policy of allowing doctors to dump patients in the street if they have no insurance.

271.    In following this unwritten policy, the EAMC has caused Plaintiff to suffer physical, mental and emotional distress, as well as being hospitalized for five days. Plaintiff submits that the custom and practice of the EAMC dumping patients in the street, violates the Emergency Medical Treatment and Active Labor Act of 1986, and the court should impose a $50,000 fine against this state owned and operated acute primary care hospital to stress upon staff that the federal court will not tolerate it violating this federal law.

## XIX.   Fourteenth Cause of Action

272.    Plaintiff files this Fourteenth cause of action pursuant to 42 U.S.C. § 1983, and alleges and incorporates paragraphs 1 through 271, as if fully set forth herein as the Fourteenth cause of action.

273.    Plaintiff alleges that Defendants Andrus and Lynd have violated the Emergency Medical Treatment and Active Labor Act of 1986, where they adopted and continue to enforce a hospital policy that results in patients being dumped in the street if

they do not have Medicaid, Medicare, or private health insurance. Patient dumping is a violation of federal law, under the Emergency Medical Treatment and Active Labor Act of 1986, and carries a fine up to fifty thousand dollars per violation.

274.   Plaintiff alleges further that Defendants Andrus and Lynd have violated the equal protection clause contained in the United States Constitution, where they not only covered up Plaintiff being dumped in the street, but also violated the State of Alabama Constitution, which guarantees its citizens the right to the pursuit of happiness, and is also actionable under the equal Protection Clause contained in the Fourteenth Amendment to the United States Constitution.

275.   In claiming that Plaintiff received medically appropriate care, while at the EAMC in Valley Alabama, Defendants Andrus and Lynd violated his Fifth and Fourteenth Amendment Due Process Rights under the United States Constitution. The records show that staff at the EAMC tried on at least four occasions to collect money from Plaintiff after dumping him in the street. Defendants take lightly the fact that Plaintiff could have gone into a diabetic coma and possibly died from not being treated to the point of self-stabilization.

276.   Plaintiff advances that Defendants Andrus and Lynd deliberately covered up his nearly dying so they could continue their illegal practice of dumping uninsured patients in the street, and then making a profit from their criminal activities.

277   Rather than to correct the seriously flawed custom of Defendant Andrus, Defendant Lynd simply declared that the medical treatment Plaintiff received while at the EAMC was medically proper.   If this were true, Plaintiff would not have been hospitalized three days later with a blood glucose level of 1223 mg/dl.

## XX.    Fifteenth Cause of Action

278.    Plaintiff files this fifteenth cause of action pursuant to 42 U.S.C. § 1983 and 403 US 388 (1971), and alleges and incorporates paragraphs 1 through 277, as if fully set forth herein as the fifteenth cause of action.

279.    Plaintiff alleges that Defendants Cobb, Fagan, Camellia, and Doe (2) have all violated his right, under the Emergency Medical Treatment and Active Labor Act of 1986, by causing him to be dumped in the street before receiving self-stabilizing emergency room treatment.

280.    In failing to follow lawful procedures, Defendant Doe (2) called Defendant Camellia for approval of Plaintiff's emergency room treatment.  Defendant Camellia not only denied Defendant Doe (2)'s request for payment of Plaintiff's emergency room visit, but she also belied the medical record with false information.

281.    In failing to admit Plaintiff to a hospital ward for at lease one day for observation and further treatment, Defendants Cobb, and Fagan caused his blood sugar level to elevate in excess of 1200 mg/dl, requiring five days of hospitalization to stabilize. In causing Plaintiff to be put into this extremely life-threatening situation, Defendants Cobb, Fagan, Camellia, and Doe (2) have all caused him to be physically, mentally, and emotionally distressed, as well as suffering minor damage to his eyesight.

**WHEREFORE**, Plaintiff seeks the appointment of counsel, attorney fees, discovery, class action status, punitive damages, and a permanent injunction ordering Defendants to stop adopting and enforcing laws, which abridge the rights of veterans.

Plaintiff further seeks monetary damages in the amount of $150,000 dollars, punitive damages not less than 15 million dollars, class action damages not less than one billion dollars, and for such other and further relief as this court deems just and proper.

Dated: Lanett, Alabama
    March 19, 2019

Plaintiff declares under penalty of perjury that the foregoing is true and correct.

*Donald Jones*

Donald Jones
Plaintiff, Pro Se
414 N 14th Ave
Lanett, AL 36863